# EXHIBIT 13
## JULY 1, 2020 LETTER FROM U.S. DOE



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES
OFFICE OF SPECIAL EDUCATION PROGRAMS

July 1, 2020

Honorable James Lane, Ph.D.
Superintendent of Public Instruction
Virginia Department of Education
P.O. Box 2120
Richmond, Virgina 23218

Dear Superintendent Lane:

We have approved Virginia application for Federal Fiscal Year (FFY) 2020 funds under Part B of the Individuals with Disabilities Education Act (IDEA Part B). Our approval is based on our review of the IDEA Part B application submitted by the Virginia Department of Education to the U.S. Department of Education (Department), Office of Special Education Programs (OSEP), on May 7, 2020, including the assurances provided in Section II and incorporated by reference to this letter as noted in Enclosure A. Our approval is also based on the State's certification in Section II.D of its FFY 2020 application (Enclosure B), signed by you on May 6, 2020, that the State's provisions meet the requirements of IDEA Part B as found in Public Law 108-446, and that the State will operate its Part B program in accordance with all of the required assurances and certifications, consistent with 34 CFR §76.104.

Please note that OSEP Memorandum 20-01, dated January 23, 2020, explained the impact of recent amendments to the Copyright Act, 17 U.S.C. § 121, on certain terms relevant to Assurance 23a or 23b related to accessible instructional materials as reflected in your State's FFY 2020 application for funds under IDEA Part B. As a result, the term "blind and other persons with print disabilities" has been removed from the Copyright Act and replaced with "eligible person," and the term "specialized format" has been removed and replaced with the term "accessible format." Although at this time Congress has not made conforming amendments to section 612(a)(23) of IDEA, the Department construes Assurances 23a and 23b as incorporating the terms "eligible person" and "accessible format."

Please note that as part of your application for FFY 2020, your State has provided a certification, pursuant to 34 CFR §76.104, that its application meets the requirements of IDEA Part B and that the State will operate its Part B program in accordance with all of the required assurances and certifications. Any changes made by the State, after OSEP approval, to information that is a part of a State's application, must meet the public participation requirements in 34 CFR §300.165.

Enclosed are the State's FFY 2020 grant awards for funds currently available under Title III of Division A of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94) for the IDEA Part B Section 611 (Grants to States) and Section 619 (Preschool Grants) programs. These funds are available for obligation by States from July 1, 2020 through September 30, 2022, in accordance with 34 CFR §76.709.

The amount in your award for Section 619 represents the full amount of funds to which you are entitled. However, the amount shown in your award for the Section 611 program is only part of

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-2800

www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – Chief State School Officer

the total funds that will be awarded to you for FFY 2020. Of the $12,764,392,000 appropriated for Section 611 in FFY 2020, $3,481,009,000 is available for awards on July 1, 2020, and $9,283,383,000 will be available for awards on October 1, 2020. Under the Section 611 formula, in a year in which the amount available for allocations to States increases from the prior year, subject to certain maximum and minimum funding requirements, State allocations are based on the amount that each State received under Section 611 for FFY 1999, the relative population of children in the age range for which each State ensures the availability of a free appropriate public education (FAPE) to children with disabilities, and the relative population of children living in poverty in the age range for which each State ensures the availability of FAPE to children with disabilities.[1]

For FFY 2020, the appropriation for the Preschool Grants program is $394,120,000. Under the Section 619 formula in a year in which the amount available for allocations to States remains the same or increases from the prior year, State allocations, subject to certain maximum and minimum funding requirements, are based on the amount that each State received under Section 619 for FFY 1997, the relative population of children aged three through five, and the relative population of all children aged three through five living in poverty.

Enclosure C provides a short description of how Section 611 funds were allocated and how those funds can be used. In addition, Table I in Enclosure C shows funding levels for distribution of Section 611 funds and the parameters for within-State allocations.

Enclosure D provides a short description of how Section 619 funds were allocated and how those funds can be used. In addition, Table II in Enclosure D shows State-by-State funding levels for distribution of Section 619 funds.

Section 611(e)(1)(C) of the IDEA provides that "[p]rior to expenditure of funds under this paragraph [Section 611(e)(1) concerning funds for State administration], the State shall certify to the Secretary that the arrangements to establish responsibility for services pursuant to [S]ection 612(a)(12)(A) are current." We read this provision to mean that if a State does not have interagency agreements or other arrangements in place to establish responsibility for the provision of services, the State may not expend funds available to the State under Section 611(e)(1) [State administration funds] until the State has these agreements or arrangements in place.

Under Section 608(a)(2) of the IDEA, each State that receives funds under IDEA Part B is required to inform, in writing, local educational agencies located in the State of any State-imposed rule, regulation, or policy that is not required by IDEA or Federal regulations. A State may use the same list of State-imposed rules, regulations, and policies that it was required to submit to the Department in Section IV of its IDEA Part B application for this purpose.

---

[1] The amount that a State's allocation may increase from one year to the next is capped at the amount the State received in the prior year multiplied by the sum of 1.5 percent and the percentage increase in the total amount appropriated for Part B of IDEA from the prior year. Additionally, the maximum amount that a State may receive in any fiscal year is calculated by multiplying the number of children with disabilities ages 3 through 21 served during the 2004-2005 academic year in that State by 40 percent of the annual per pupil expenditure (APPE), adjusted by the rate of annual change in the sum of 85 percent of the children aged 3 through 21 for whom that State ensures the availability of FAPE and 15 percent of the children living in poverty. Because there are multiple caps, in any year the "effective cap" on a State's allocation is the lowest cap for that State.

Page 3 – Chief State School Officer

In Section V of its IDEA Part B application, pursuant to the authority in IDEA Section 618(a)(3), the State was required to submit data on the total amount of State financial support made available for special education and related services for children with disabilities in State fiscal year (SFY) 2018 and SFY 2019. If OSEP receives information through audits, fiscal monitoring or other means that raises questions about the data your State has provided in Section V, OSEP will follow-up with your State.

Section 604 of the IDEA provides that "[a] State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this [Act]." Section 606 provides that each recipient of assistance under the IDEA make positive efforts to employ and advance in employment qualified individuals with disabilities in programs assisted under the IDEA. Therefore, by accepting this grant, your State is expressly agreeing as a condition of IDEA funding to a waiver of Eleventh Amendment immunity and to ensuring that positive efforts are made to employ and advance employment of qualified individuals with disabilities in programs assisted under the IDEA.

The enclosed grant awards of FFY 2020 funds are made with the continued understanding that this Office may, from time to time, require clarification of information within your application, if necessary. These inquiries may be necessary to allow us to appropriately carry out our administrative responsibilities related to IDEA Part B.

As a reminder, all prime recipients of IDEA Part B funds must report subaward information as required by the Federal Funding Accountability and Transparency Act of 2006 (FFATA), as amended in 2008. First-tier subaward information must be reported by the end of the following month from when the award was made or obligated. FFATA guidance is found at https://www.fsrs.gov/. Please contact your State's Fiscal Accountability Facilitator if you have further questions.

We appreciate your ongoing commitment to the provision of quality educational services to children with disabilities.

    Sincerely,

    *Laurie VanderPloeg*

    Laurie VanderPloeg
    Director
    Office of Special Education Programs

Enclosures

    Enclosure A (Sections II.A-C of the State's application)
    Enclosure B (Section II.D of the State's application)
    Enclosure C
    Enclosure D

cc: State Director of Special Education

**State Name: Virginia**

# Enclosure A

## Section II

### A. Assurances Related to Policies and Procedures

The State makes the following assurances that it has policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act. (20 U.S.C. 1411-1419; 34 CFR §§300.100-300.174)

| Yes *(Assurance is given.)* | No *(Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) Check and enter date(s) as applicable* | Assurances Related to Policies and Procedures |
|---|---|---|
| X |  | 1. A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled, in accordance with 20 U.S.C. 1412(a)(1); 34 CFR §§300.101-300.108. |
| X |  | 2. The State has established a goal of providing a full educational opportunity to all children with disabilities and a detailed timetable for accomplishing that goal. (20 U.S.C. 1412(a)(2); 34 CFR §§300.109-300.110) |
| X |  | 3. All children with disabilities residing in the State, including children with disabilities who are homeless or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services in accordance with 20 U.S.C. 1412(a)(3); 34 CFR §300.111. |
| X |  | 4. An individualized education program, or an individualized family service plan that meets the requirements of section 636(d), is developed, reviewed, and revised for each child with a disability in accordance with 34 CFR §§300.320 through 300.324, except as provided in §§300.300(b)(3) and 300.300(b)(4). (20 U.S.C. 1412(a)(4); 34 CFR §300.112) |
| X |  | 5. To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular |

|  |  |  | |
|---|---|---|---|
|  |  |  | classes with the use of supplementary aids and services cannot be achieved satisfactorily in accordance with 20 U.S.C. 1412(a)(5)(A)-(B); 34 CFR §§300.114-300.120. |
| X |  | 6. | Children with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§300.500 through 300.536 and in accordance with 20 U.S.C. 1412(a)(6); 34 CFR §300.121. |
| X |  | 7. | Children with disabilities are evaluated in accordance with 34 CFR §§300.300 through 300.311.  (20 U.S.C. 1412(a)(7); 34 CFR §300.122) |
| X |  | 8. | Agencies in the State comply with 34 CFR §§300.610 through 300.626 (relating to the confidentiality of records and information). (20 U.S.C. 1412(a)(8); 34 CFR §300.123) |
| X |  | 9. | Children participating in early intervention programs assisted under Part C, and who will participate in preschool programs assisted under this part, experience a smooth and effective transition to those preschool programs in a manner consistent with section 637(a)(9). By the third birthday of such a child, an individualized education program or, if consistent with 34 CFR §300.323(b) and section 636(d), an individualized family service plan, has been developed and is being implemented for the child. The local educational agency will participate in transition planning conferences arranged by the designated lead agency under section 635(a)(10).  (20 U.S.C. 1412(a)(9); 34 CFR §300.124) |
| X |  | 10. | Agencies in the State, and the SEA if applicable, comply with the requirements of 34 CFR §§300.130 through 300.148 (relating to responsibilities for children in private schools), including that to the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary schools and secondary schools in the school district served by a local educational agency, provision is made for the participation of those children in the program assisted or carried out under this part by providing for such children special education and related services in accordance with the requirements found in 34 CFR §§300.130 through 300.148  unless the Secretary has arranged for services to those children under subsection (f) [By pass].  (20 U.S.C. 1412(a)(10); 34 CFR §§300.129-300.148) |
| X |  | 11. | The State educational agency is responsible for ensuring that the requirements of Part B are met including the requirements of 34 CFR §§300.113, 300.149, 300.150 through 300.153, and 300.175 and 300.176 and that the State monitors and enforces the requirements of Part B in accordance with 34 CFR §§300.600-300.602 and 300.606-300.608.  (20 U.S.C. 1412(a)(11); 34 CFR §300.149) |
| X |  | 12. | The Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 CFR §300.154 and the State educational agency, in order to ensure that all services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, including the provision of such services during the pendency of any dispute under §300.154(a)(3). Such agreement or |

| | | | |
|---|---|---|---|
| | | | mechanism shall meet the requirements found in 20 U.S.C. 1412(a)(12)(A)-(C); 34 CFR §300.154. |
| X | | 13. | The State educational agency will not make a final determination that a local educational agency is not eligible for assistance under this part without first affording that agency reasonable notice and an opportunity for a hearing.  (20 U.S.C. 1412(a)(13); 34 CFR §300.155) |
| X | | 14. | The State educational agency has established and maintains qualifications to ensure that personnel necessary to carry out this part are appropriately and adequately prepared and trained, including that those personnel have the content knowledge and skills to serve children with disabilities as noted in 20 U.S.C. 1412(a)(14)(A)-(E); 34 CFR §300.156. |
| X | | 15. | The State has established goals for the performance of children with disabilities in the State that meet the requirements found in 20 U.S.C. 1412(a)(15)(A)-(C); 34 CFR §300.157. |
| X | | 16. | All children with disabilities are included in all general State and districtwide assessment programs, including assessments described under section 1111 of the Elementary and Secondary Education Act of 1965, with appropriate accommodations and alternate assessments where necessary and as indicated in their respective individualized education programs as noted in 20 U.S.C. 1412(a)(16)(A)-(E); 34 CFR §300.160. |
| X | | 17. | Funds paid to a State under this part will be expended in accordance with all the provisions of Part B including 20 U.S.C. 1412(a)(17)(A)-(C); 34 CFR §300.162. |
| X | | 18. | The State will not reduce the amount of State financial support for special education and related services for children with disabilities, or otherwise made available because of the excess costs of educating those children, below the amount of that support for the preceding fiscal year, unless a waiver is granted, in accordance with 20 U.S.C. 1412(a)(18)(A)-(D); 34 CFR §§300.163 through 300.164. |
| X | | 19. | Prior to the adoption of any policies and procedures needed to comply with this section (including any amendments to such policies and procedures), the State ensures that there are public hearings, adequate notice of the hearings, and an opportunity for comment available to the general public, including individuals with disabilities and parents of children with disabilities.  (20 U.S.C. 1412(a)(19); 34 CFR §300.165) |
| X | | 20. | In complying with 34 CFR §§300.162 and 300.163, a State may not use funds paid to it under this part to satisfy State-law mandated funding obligations to local educational agencies, including funding based on student attendance or enrollment, or inflation.  (20 U.S.C. 1412(a)(20); 34 CFR §300.166) |
| X | | 21. | The State has established and maintains an advisory panel for the purpose of providing policy guidance with respect to special education and related services for children with disabilities in the State as found in 20 U.S.C. 1412(a)(21)(A)-(D); 34 CFR §§300.167-300.169. |
| X | | 22. | The State educational agency examines data, including data disaggregated by race and ethnicity, to determine if significant |

| | | | |
|---|---|---|---|
| | | | discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities in accordance with 20 U.S.C. 1412(a)(22)(A)-(B); 34 CFR §300.170. |
| X | | 23a. | The State adopts the National Instructional Materials Accessibility Standard for the purposes of providing instructional materials to blind persons or other persons with print disabilities, in a timely manner after the publication of the National Instructional Materials Accessibility Standard in the Federal Register in accordance with 20 U.S.C. 1412(a)(23)(A) and (D); 34 CFR §300.172. |
| | | 23b. | *(Note: Check either "23b.1" or "23b.2" whichever applies.* |
| X | | 23b.1 | The State educational agency coordinates with the National Instructional Materials Access Center and not later than 12/03/06 the SEA as part of any print instructional materials adoption process, procurement contract, or other practice or instrument used for purchase of print instructional materials enters into a written contract with the publisher of the print instructional materials to: <br><br>• require the publisher to prepare and, on or before delivery of the print instructional materials, provide to the National Instructional Materials Access Center, electronic files containing the contents of the print instructional materials using the National Instructional Materials Accessibility Standard; or <br><br>• purchase instructional materials from the publisher that are produced in, or may be rendered in, specialized formats. (20 U.S.C. 1412(a)(23)(C); 34 CFR §300.172) |
| | | 23b.2 | The State educational agency has chosen not to coordinate with the National Instructional Materials Access Center but assures that it will provide instructional materials to blind persons or other persons with print disabilities in a timely manner. (20 U.S.C. 1412(a)(23)(B); 34 CFR §300.172) |
| X | | 24. | The State has in effect, consistent with the purposes of the IDEA and with section 618(d) of the Act, policies and procedures designed to prevent the inappropriate overidentification or disproportionate representation by race and ethnicity of children as children with disabilities, including children with disabilities with a particular impairment described in 34 CFR §300.8. (20 U.S.C 1412(a)(24); 34 CFR §300.173) |
| X | | 25. | The State educational agency shall prohibit State and local educational agency personnel from requiring a child to obtain a prescription for a substance covered by the Controlled Substances Act (21 U.S.C. 812(c)) as a condition of attending school, receiving an evaluation under 34 CFR §§300.300 through 300.311, or receiving services under the IDEA as described in 20 U.S.C. 1412(a)(25)(A)-(B); 34 CFR §300.174. |

### B. Other Assurances

The State also makes the following assurances:

| Yes | Other Assurances |
|---|---|
| X | 1. The State shall distribute any funds the State does not reserve under 20 U.S.C. 1411(e) to local educational agencies (including public charter schools that operate as local educational agencies) in the State that have established their eligibility under section 613 for use in accordance with this part as provided for in 20 U.S.C. 1411(f)(1)-(3); 34 CFR §300.705. |
| X | 2. The State shall provide data to the Secretary on any information that may be required by the Secretary.  (20 U.S.C. 1418(a)(3); 34 CFR §§300.640-300.645.) |
| X | 3. The State, local educational agencies, and educational service agencies shall use fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds. (34 CFR §76.702) |
| X | 4. As applicable, the assurance in OMB Standard Form 424B (Assurances for Non-Construction Programs), relating to legal authority to apply for assistance; access to records; conflict of interest; merit systems; nondiscrimination; Hatch Act provisions; labor standards; flood insurance; environmental standards; wild and scenic river systems; historic preservation; protection of human subjects; animal welfare; lead-based paint; Single Audit Act; and general agreement to comply with all Federal laws, executive orders and regulations. |

### C. Certifications

The State is providing the following certifications:

| Yes | Certifications |
|---|---|
| X | 1. The State certifies that ED Form 80-0013, *Certification Regarding Lobbying*, is on file with the Secretary of Education.<br><br>With respect to the *Certification Regarding Lobbying,* the State recertifies that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making or renewal of Federal grants under this program; that the State shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," when required (34 CFR Part 82, Appendix B); and that the State Agency shall require the full certification, as set forth in 34 CFR Part 82, Appendix A, in the award documents for all sub awards at all tiers. |
| X | 2. The State certifies that certification in the Education Department General Administrative Regulations (EDGAR) at 34 CFR §76.104 relating to State eligibility, authority and approval to submit and carry out the provisions of its State application, and consistency of that application with State law are in place within the State. |
| X | 3. The State certifies that the arrangements to establish responsibility for services pursuant to 20 U.S.C. 1412(a)(12)(A)-(C); 34 CFR §300.154 (or 20 U.S.C. 1412(a)(12)(A); 34 CFR §300.154(a) are current.  This certification must be received prior to the expenditure of any funds reserved by the State under 20 U.S.C. 1411(e)(1); 34 CFR §300.171. |

Enclosure C
IDEA Grants to States Program
(Part B, Section 611)

**Explanation of the Federal Fiscal Year (FFY) 2020 Allocation Table**

### Total Grant Award (Column B)

Column B shows your total grant award for the Grants to States program for FFY 2020 under Title III of Division A of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94).

State total grants are calculated in accordance with several factors. First, each State is allocated an amount equal to the amount that it received for fiscal year 1999. If the total program appropriation increases over the prior year, 85 percent of the remaining funds are allocated based on the relative population of children aged 3 through 21 who are in the age range for which the State ensures the availability of a free appropriate public education (FAPE) to children with disabilities. Fifteen percent of the remaining funds are allocated based on the relative population of children aged 3 through 21 living in poverty who are in the age range for which the State ensures the availability of FAPE to children with disabilities. The statute also includes several maximum and minimum allocation requirements when the amount available for distribution to States increases.

If the amount available for allocation to States remains the same from one year to the next, States receive the same level of funding as in the prior year. If the amount available for allocation to States decreases from the prior year, any amount available for allocation to States above the fiscal year 1999 level is allocated based on the relative increases in funding that the States received between fiscal year 1999 and the prior year. If there is a decrease below the amount allocated for 1999, each State's allocation is ratably reduced from the fiscal year 1999 level.

### Section 611 Base Allocation to LEAs (Column C)

Column C is the portion of the local educational agency (LEA) flow-through amount that must be distributed to LEAs based on the amounts that the LEAs would have received from FFY 1999 funds had the State educational agency (SEA) flowed through 75 percent of the State award to LEAs. Note that this amount is less than the minimum amount that States were required to provide to LEAs from FFY 1999 funds. The Part B regulations at 34 CFR §300.705(b)(2) clarify how adjustments to the base payment amounts for LEAs are made.

### Maximum Set-Aside for Administration (Column D)

Column D includes the maximum State set-aside amount for administration. A State may reserve for State administration up to the greater of the maximum amount the State could reserve for State administration from fiscal year 2004 funds, or $800,000, increased by inflation as reflected by the Consumer Price Index for All Urban Consumers (CPIU). The maximum State set-aside amount available for administration for FFY 2020 is a 2.0 percent increase over the maximum amount that was available for FFY 2019. Each outlying area may reserve for each fiscal year not more than 5 percent of the amount the outlying area receives under this program or $35,000, whichever is greater.

**Maximum Set-Aside Available for Other State-Level Activities (Columns E - H)**

The maximum level of funding that may be set aside from a State's total allocation for State-level activities, other than administration, is contingent upon the amount that the State actually sets aside for administration and whether the State opts to establish a LEA high-risk pool under IDEA, section 611(e)(3). For FFY 2020:

(1) If the actual amount a State will set aside for State administration is over $850,000 and the State will use funds from its award to support a high-risk pool, the maximum amount the State may set aside of its total award for State-level activities (other than administration) is 10.0 percent of its FFY 2006 award as adjusted for inflation based on the CPIU.

(2) If the actual amount a State will set aside for State administration is over $850,000 and the State will not use funds from its award to support a high-risk pool, the maximum amount the State may set aside of its total award for State-level activities (other than administration) is 9.0 percent of its FFY 2006 award as adjusted for inflation based on the CPIU.

(3) If the actual amount a State will set aside for State administration is $850,000 or less and the State will use funds from its award to support a high-risk pool, the maximum amount the State may set aside of its total award for State-level activities (other than administration) is 10.5 percent of its FFY 2006 award as adjusted for inflation based on the CPIU.

(4) If the actual amount a State will set aside for State administration is $850,000 or less and the State will not use funds from its award to support a high-risk pool, the maximum amount the State may set aside of its total award for State-level activities (other than administration) is 9.5 percent of its FFY 2006 award as adjusted for inflation based on the CPIU.

SEAs are required to use some portion of these State set-aside funds on monitoring, enforcement, and complaint investigation and to establish and implement the mediation process required by section 615(e), including providing for the costs of mediators and support personnel. In addition, States setting aside funds for a high-risk pool, as provided for under section 611(e)(3), must reserve at least 10 percent of the amount the State reserved for State-level activities for the high-risk pool.

SEAs also may use State set-aside funds: (1) for support and direct services, including technical assistance, personnel preparation, and professional development and training; (2) to support paperwork reduction activities, including expanding the use of technology in the individualized education program process; (3) to assist LEAs in providing positive behavioral interventions and supports and mental health services to children with disabilities; (4) to improve the use of technology in the classroom by children with disabilities to enhance learning; (5) to support the use of technology, including technology with universal design principles and assistive technology devices, to maximize accessibility to the general education curriculum for children with disabilities; (6) for development and implementation of transition programs, including coordination of services with agencies involved in supporting the transition of students with disabilities to postsecondary activities; (7) to assist LEAs in meeting personnel shortages; (8) to support capacity building activities and improve the delivery of services by LEAs to improve results for children with disabilities; (9) for alternative programming for children with disabilities who have been expelled from school, and services for children with disabilities in correctional facilities, children enrolled in State-operated or State-supported schools, and children with disabilities in charter schools; (10) to support the development and provision of appropriate accommodations for children with disabilities, or the development and provision of alternate assessments that are valid and reliable for assessing the performance of children with disabilities,

in accordance with sections 1111(b) and 1201 of the Elementary and Secondary Education Act of 1965 (ESEA); and (11) to provide technical assistance to schools and LEAs, and direct services, including direct student services described in section 1003A(c)(3) of the ESEA to children with disabilities, in schools or LEAs implementing comprehensive support and improvement activities or targeted support and improvement activities under section 1111(d) of the ESEA on the basis of consistent underperformance of the disaggregated subgroup of children with disabilities, including providing professional development to special and regular education teachers, who teach children with disabilities, based on scientifically based research to improve educational instruction, in order to improve academic achievement based on the challenging academic standards described in section 1111(b)(1) of the ESEA.

**Section 611 Population/Poverty**

The minimum amount that a State must flow through to LEAs based on population/poverty equals the total award (Column B) minus the LEA base allocation (Column C), the maximum amount available for administration (Column D), and the maximum amount available for other State-level activities (Column E, F, G, or H). Of this amount, 85 percent must be distributed on a pro-rata basis to LEAs according to public and private elementary and secondary school enrollment, and 15 percent on a pro-rata basis to LEAs according to the number of children in LEAs living in poverty, as determined by the State.

Enclosure D
IDEA Preschool Grants Program
(Part B, Section 619)

Explanation of the Federal Fiscal Year (FFY) 2020 Allocation Table

**Total Grant Award (Column B)**

Column B shows your total grant award for the Preschool Grants program for FFY 2020 under the Title III of Division A of the Further Consolidated Appropriations Act, 2020 (Public Law 116-94).

State total grants are calculated in accordance with several factors. First, each State is allocated an amount equal to its fiscal year 1997 allocation. For any year in which the appropriation is greater than the prior year level, 85 percent of the funds above the fiscal year 1997 level are distributed based on each State's relative population of children aged 3 through 5. The other 15 percent is distributed based on each State's relative population of children aged 3 through 5 who are living in poverty. The formula provides several minimums and maximums regarding the amount a State can receive in any year.

If the amount available for allocation to States remains the same from one year to the next, States receive the same level of funding as in the prior year. If the amount available for allocation to States decreases from the prior year, any amount available for allocation to States above the fiscal year 1997 level is allocated based on the relative increases in funding that the States received between fiscal year 1997 and the prior year. If there is a decrease below the amount allocated for fiscal year 1997, each State's allocation is ratably reduced from the fiscal year 1997 level.

**Maximum State Set-Aside (Column C)**

States may reserve funds for State-level activities up to an amount equal to 25 percent of the amount they received for fiscal year 1997 under the Preschool Grants program, adjusted upward each year by the lesser of either the rate of increase in the State's allocation or the rate of inflation as reflected by the Consumer Price Index for All Urban Consumers (CPIU). If a State chooses to set-aside the maximum amount of FFY 2020 section 619 funds for State-level activities, the amount available for making local educational agency (LEA) base payments in Column E may be below 75 percent of the State's FFY 1997 section 619 grant.

State educational agencies (SEAs) may use State set-aside funds: (1) for administration (limited to no more than 20 percent of the maximum State set-aside – Column C); (2) for support services (including establishing and implementing the mediation process required under section 615(e) of the IDEA and 34 CFR §300.506), which may benefit children with disabilities younger than 3 or older than 5, as long as those services also benefit children with disabilities aged 3 through 5; (3) for direct services for children with disabilities who are eligible for services under section 619; (4) for activities at the State and local levels to meet the performance goals established by the State under section 612(a)(15) of the IDEA; (5) to supplement other funds used to develop and implement a statewide coordinated services system designed to improve results for children and families, including children with disabilities and their families (but not more than up to 1 percent of the amount received under this program); (6) to provide early intervention services (which shall include an educational component that promotes school readiness and incorporates preliteracy, language, and numeracy skills) in accordance with Part C to children with disabilities who are eligible for services under section 619 and who previously received services under Part

C until such children enter, or are eligible under State law to enter, kindergarten; or (7) at the State's discretion, to continue service coordination or case management for families who receive services under Part C, consistent with number 6.

**Maximum Set-Aside Available for Administration (Column D)**

Column D indicates the maximum portion of the total State set-aside amount (Column C) that may be used to administer this program. The amount that may be used for administration is limited to 20 percent of the maximum amount available to a State for State-level activities. These funds may also be used, at the State's discretion, for the administration of the Grants for Infants and Families program (Part C).

**Section 619 Base Payment for LEAs (Column E)**

Column E is the portion of the LEA flow-through amount that must be distributed to LEAs based on the amounts that the LEAs would have received from the FFY 1997 funds had the SEA flowed through 75 percent of the State award to LEAs. Note that this amount is less than the minimum amount that States were required to provide LEAs from the FFY 1997 funds. The Part B regulations at 34 CFR §300.816(b) clarify how adjustments to the base payment amounts for LEAs are made. If after the State set-aside is subtracted from the total award, the State determines that the amount available for base payments is less than 75 percent of the State's FFY 1997 section 619 grant, the State must ratably reduce each LEA's base payment by the percentage of the reduction in the total amount actually available for making base payments in FFY 2017.  For example, if the total amount in the "Base Payment for LEAs" column is $100 and the total amount available for making base payments in FFY 2019 is $90, the reduction in the total base payment amount is 10 percent, and each LEA's base payment for FFY 2020 must be reduced by 10 percent.  The State, if necessary, must make base payment adjustments in accordance with 34 CFR §300.816(b) based on the ratably reduced base payments.

**Section 619 Population/Poverty Factors (Column F)**

Column F shows the minimum amount a State must allocate to LEAs based on population and poverty factors if a State chooses to set aside the maximum amount of FFY 2020 section 619 funds for State-level activities. As noted above, if a State chooses to set aside the maximum amount of FFY 2020 section 619 funds for State-level activities, the amount available for LEA subgrants could be below the base payment amount in Column E, and the State will not have any remaining section 619 funds available after making base payments. Therefore, the State would be unable to make a population or poverty payment. If States with no funds in Column F reserve the maximum amount of FFY 2020 section 619 funds for State-level activities, they would be unable to make a population or poverty payment.

However, if a State does not set aside the maximum amount for State-level activities and additional funds are available after making base payments, 85 percent of the remaining amount must be distributed on a pro-rata basis to LEAs according to public and private elementary and secondary school enrollment, and 15 percent on a pro-rata basis to LEAs according to the number of children in LEAs living in poverty, as determined by the State.

**Total State Minimum Flow-Through to LEAs (Column G)**

The minimum flow-through to LEAs (Column G) is the difference between the Total Grant Award (Column B) and the Maximum State Set-Aside (Column C). If States do not choose to retain the maximum amount available under the State set-aside (Column C), the remaining funds flow through to LEAs in addition to the funds in Column G.