CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
6/2/2022
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

JENNIFER BILLS, *et al.*,

        *Plaintiffs*,

v.

VIRGINIA DEPARTMENT OF
EDUCATION, *et al.*,

        *Defendants*.

CASE NO. 6:21-cv-51

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

## I. Background

This case arises out of several Virginia school boards' decisions to institute remote learning during the early stages of the COVID-19 pandemic. Plaintiffs are the parents of five students who attend or attended public schools in the six school systems named as defendants: Alexandria, Amherst County, Chesapeake, Chesterfield County, Loudoun County, and Virginia Beach.[1] (Dkt. 1 at ¶¶ 26–31). The complaint also names as defendants the superintendents of those school systems in their official capacities, the Virginia Department of Education, and Dr. James. F. Lane, the former statewide Superintendent of Public Instruction for Virginia, in his official capacity. (*Id.* at ¶¶ 25, 49–54). The complaint alleges that Defendants failed to provide students with disabilities a free appropriate public education (FAPE) as is required by the

---

[1] The complaint identifies each city or county's public school system as defendants (e.g., "Chesterfield County Public Schools," "Chesapeake Public Schools") but "public schools" are not legal entities, so Defendants' briefs have been submitted by the legal entities authorized to act on behalf of the intended defendants—the school boards of each of the defendant cities and counties. *See* Va. Code § 22.1-71; *Augustine v. Winchester Pub. Sch. Dist.*, No. 5:13-cv-25, 2013 WL 5347465, at *1 (W.D. Va. Sept. 17, 2013) ("Winchester Public School District is not a legal entity capable of being sued.").

Individuals with Disabilities Education Act (IDEA) during the pandemic. Plaintiffs allege specifically that Defendants violated the IDEA and an assortment of other state and federal laws by requiring remote education for all students, including both disabled and non-disabled students, during the early stages of the pandemic. (*Id.* at ¶¶ 194–360).

In scattershot fashion, the complaint lists ten causes of action, including violations of:

- Count One: The IDEA;

- Count Two: Virginia's procedural requirements for special education in its administrative code, 8 Va. Admin. Code § 20-18-170;

- Count Three: Section 504 of the Rehabilitation Act;

- Count Four: Title II of the Americans with Disabilities Act (ADA);

- Count Five: the Virginia Humans Rights Act (VHRA);

- Count Six: the Virginians with Disabilities Act;

- Count Seven: The Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983;

- Count Eight: The Due Process Clause of the Fourteenth Amendment under § 1983; and,

- Counts Nine and Ten: The Racketeer Influenced and Corrupt Organizations Act (RICO).

(*Id.*).

As a remedy, Plaintiffs request a declaratory judgment, an injunction, nominal damages, punitive damages, a statutory fee application, attorneys' fees, costs, the assignment of a RICO special monitor to audit and oversee Defendants' expenditures, and compensation in the form of an additional year of education or more for each student or a voucher to address the alleged loss of educational time. (*Id.* at pp. 57–60).

Defendants have moved the Court to dismiss all ten counts. (Dkt. 25, 28, 30, 36). They argue that the Court should dismiss each count in the complaint under Fed. R. Civ. P. 12(b)(1)

and/or 12(b)(6). They argue that Plaintiffs do not have Article III standing, that they have not exhausted their administrative remedies, that their claims against some defendants are barred by the 11th Amendment, and that Plaintiffs have not stated facts to support a plausible claim under several of the causes of action. (*See* Dkt. 26, 29, 31, 37).

The Court will dismiss the Complaint in its entirety, with prejudice. Although Plaintiffs have Article III standing, they have not adequately exhausted their administrative remedies under Counts One through Eight, as is required by the IDEA, and they have failed to state plausible claims for relief under Counts Nine and Ten. In addition, Defendants VDOE and Lane are entitled to sovereign immunity for some of the claims against them.

## II. Legal Standard

### A. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure enables a party to move for dismissal by challenging a court's subject matter jurisdiction. A court must dismiss a case where the court finds subject matter jurisdiction lacking. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The plaintiff bears the burden of proving jurisdiction. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). In determining whether subject matter jurisdiction exists, the court must evaluate the allegations in the complaint as "mere evidence," and so may consider evidence outside the pleadings without converting the motion challenging jurisdiction into a summary judgment motion. *Richmond, Fredericksburg & Potomac R. R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

B. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

### III. Issues

#### A. Standing

All four motions to dismiss raise standing issues. Defendants argue that there is no redressable injury such that declaratory or injunctive relief would be warranted because none of the defendant school systems are still doing remote learning. (*See* Dkt. 26, 29, 31, 37).

Article III of the United States Constitution limits the judicial power of the federal courts to "cases" and "controversies," and thus, "restricts it . . . to redress[ing] or prevent[ing] actual or imminently threatened injury to persons caused by private or official violations of the law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) that they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

Injunctive relief is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects.'" *Lujan*, 504 U.S. at 564 (citing *Lyons*, 461 U.S. at 102)

Here, Plaintiffs filed the suit in October 2021, when the defendant school boards were providing only in-person instruction. Previously, in March 2021, the General Assembly passed, and Governor Northam signed into law, Senate Bill 1303, which required school boards in Virginia to offer in-person instruction. (Dkt. 29 at 9). Thus, Defendants argue that the issue is non-redressable—that even were Plaintiffs to succeed on the merits, no injunction the Court could provide could redress the injury because the school boards are all back to in-person

learning. (Dkt. 26 at 6–7; Dkt. 29 at 7–10; Dkt. 31 at 24–26; Dkt. 37 at 6–8).

But the Court notes that Plaintiffs are seeking nominal damages (Dkt. 1 at p. 59), and under the Supreme Court's recent ruling in *Uzuegbunam v. Preczewski*, 592 U.S. ___; 141 S. Ct. 792 (2021), a request for nominal damages satisfies the redressability element for Article III standing where a plaintiff's claim is based on a completed violation of a legal right—as alleged here. Thus, because of the request for nominal damages, the Court holds that Plaintiffs have Article III standing, even if there is no alleged ongoing violation of their rights.

B. <u>Exhaustion of Administrative Remedies</u>

The IDEA generally requires parents to exhaust their administrative remedies before turning to the courts for relief. Under the IDEA's scheme, parents of a child with a disability must first request a due process hearing with the school, and "may only file a suit in federal district court under the IDEA when they are aggrieved by a final administrative due process hearing decision." 20 U.S.C. § 1451(1)(2).

In Virginia, Title 8 of the Virginia Administrative Code, 8 Va. Admin. Code § 20-81-210, provides the procedure. That code section provides for an impartial due process hearing to resolve disputes regarding a child's special education needs. The due process hearings are held before impartial hearing officers who receive "specialized training on the federal and state special education law and regulations, as well as associated laws and regulations impacting children with disabilities, knowledge of disabilities and special education programs, case law, management of hearings, and decision writing." 8 Va. Admin. Code § 20-81-210(D)(1). Only after the hearing officer renders a final decision does an aggrieved parent have the right to appeal to a state circuit or federal district court. 8 Va. Admin. Code § 20-81-210(T).

The exhaustion requirement applicable to the IDEA applies equally to any and all claims

challenging the denial of a FAPE. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. \_\_\_; 137 S.Ct. 743, 754 (2017). In this case, that means that the exhaustion requirement applies not only to Plaintiffs' specific IDEA claim, but also all of Plaintiffs' other claims based on the alleged denial of Plaintiffs' educational needs—meaning that the exhaustion requirement applies to Counts One through Eight: the Counts in which Plaintiffs seek relief that "seek[] redress for a school's failure to provide a FAPE, even if [they are] not phrased or framed in precisely that way." *Fry*, 137 S.Ct. at 755; *see also A.W. v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 222 (E.D. Va. 2008) ("Parents may not circumvent the exhaustion requirement of the IDEA simply by filing suit under another statute.").

Plaintiffs have not pled that they exhausted their administrative remedies. (*See* Dkt. 1 at ¶¶ 99, 114, 128, 142, 155). Rather, they claim that an exception to the exhaustion requirement applies. (*Id.*). Indeed, there are several exceptions to the exhaustion requirement. *See M.M. ex rel D.M. v. Sch. Dist. of Greenville Cnty*, 303 F.3d 523, 536 (4th Cir. 2002). In the Fourth Circuit, those exceptions include: "(1) when resort to the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *Z.G. v. Pamlico Cnty Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 777 (4th Cir. 2018). It is the plaintiff's burden to prove that such an exception applies. *Id.*

First, Plaintiffs claim that resort to the administrative process would have been futile because the form of relief that they are seeking, a return to full in-person learning, was beyond the authority of an administrative hearing officer to grant. (Dkt. 58 at 6–9; Dkt. 57 at 6–8; Dkt. 59 at 7–9; Dkt. 60 at 6–11). But Plaintiffs have not offered any authority for the proposition that a request for relief under the IDEA that is outside the authority of a hearing officer to grant

7

renders resort to the administrative process futile. And, indeed, there is significant authority to the contrary. The Fourth Circuit has held that the unavailability of the specific relief sought in the administrative process does not render resort to the administrative process futile. *Z.G.*, 744 F. App'x at 777–78 (4th Cir. 2018). So too have other circuits. *See, e.g.*, *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 192–93 (3d Cir. 2021) (holding that exhaustion was still required for a claim that a school district's translation and interpretation services were so deficient that they denied a FAPE to all disabled students); *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 647 (5th Cir. 2019) (noting that "[m]ost circuits hold that the IDEA required plaintiffs who were denied a free and appropriate public education to exhaust regardless of the remedy they seek" and reviewing cases); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487–88 (2d Cir. 2002) (explaining in detail the rationale behind the exhaustion requirement and why courts have required exhaustion even where the remedy sought would be unavailable in the administrative process). This district also has held that the unavailability of a remedy in the administrative process does not render the administrative process futile because, if it did, "any party could sidestep administrative procedures by simply drafting a civil complaint that requests [unavailable] relief. Such occurrences would render administrative proceedings obsolete and would ultimately require federal courts to regularly determine educational policies more properly resolved by the individual states." *Pullen v. Botetourt Cnty Sch. Bd.*, No. 94-cv-686, 1995 WL 738983, at *3 (W.D. Va. Feb. 13, 1995).

Therefore, considering this substantial authority and finding no compelling contrary precedent, the Court holds that Plaintiffs are not excused from exhausting their administrative remedies just because the specific form of relief they are seeking would have been outside the authority of an administrative hearing officer to grant.

Plaintiffs also claim that exhaustion is not required when there is an alleged violation of the IDEA's "stay-put" provisions of 20 U.S.C. § 1415(j). (Dkt. 58 at 6–9; Dkt. 57 at 6–8; Dkt. 59 at 7–9; Dkt. 60 at 6–11). The stay-put provision provides that when there is a dispute between the parents and the school district regarding an educational placement for a child, the child should "stay put" in their current placement until the dispute is resolved. Section 1415(j) specifically states that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

At the outset, this argument fails because the stay-put provision, even where it applies, is simply not an excuse for failing to exhaust one's administrative remedies. It only provides that a student should "stay put" in their current placement "during the pendency of any proceedings" under § 1415. Where there are no pending proceedings under § 1415, the stay-put provision is inapplicable.

Plus, the stay-put provision of § 1415(j) is not triggered where the students' "educational placement" did not change within the meaning of the statute. Plaintiffs confusingly rely on *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010) for the argument that their "educational placement" changed. (Dkt. 57 at 8; Dkt. 58 at 8; Dkt. 59 at 9; Dkt. 60 at 10). But the facts and reasoning of *N.D.* cut against Plaintiffs' position. That case involved an attempt by a school system to intermittently reduce the number of school days each week in what it called a "furlough Friday" program. *N.D.*, 600 F.3d at 1107–08. The Ninth Circuit held that the furlough system *did not* trigger the "stay-put" provision because it was not a change in "educational placement" within the meaning of the statute. *Id.* at 1116–17. The court noted that "Congress did not intend for the IDEA to apply to system wide administrative decisions," and was not

9

applicable where the change in question "affect[ed] all public schools and students, disabled and non-disabled alike" because the program did not "conflict with Congress's intent of protecting disabled children from being singled out." *Id.* at 1116. The court concluded, then, that "the stay-put provision of the IDEA was not intended to cover system-wide changes in public schools that affect disabled and non-disabled children alike, and that such system-wide changes are not changes in educational placement." *Id.* at 1108. Here, where Defendants moved all students—regardless of disability—to remote learning, the change was similarly system-wide.

The Court holds that plaintiffs have not pled an exception to the IDEA's exhaustion requirement, so the Court will dismiss all claims alleging a denial of a FAPE meaning that the Court will dismiss Counts One through Eight on exhaustion grounds.

### C. Sovereign Immunity

Some defendants—VDOE and Superintendent Lane, sued in his official capacity—claim that the claims against them are barred by sovereign immunity. (Dkt. 29 at 13). They note that Congress has expressly abrogated sovereign immunity for the IDEA (Count One) and Section 504 (Count Three), but not for any of Plaintiffs' other causes of action. (*Id.* at 13–14). VDOE and Lane also argue that the *Ex parte Young* exception, which authorizes courts to issue prospective, injunctive relief against an official to prevent ongoing violations of federal law, does not apply because there is no "ongoing violation of federal law" because the defendant school systems have resumed full in-person learning. (*Id.* at 16–17).

Plaintiffs respond that the U.S. Department of Education sent a letter to VDOE making an abrogation of sovereign immunity for IDEA claims a condition of accepting certain IDEA-related funds. (Dkt. 59 at 6). But, as Defendants note, the letter is irrelevant because Plaintiffs have conceded that states do not have immunity for claims brought under Section 604 of the

IDEA and do not argue that they have immunity under Count 1. (Dkt. 65 at 6).

Plaintiffs did not respond to this argument in their response brief to VDOE and Lane's motion other than to argue that VDOE and Lane were not entitled to sovereign immunity for Counts One and Three, which VDOE and Lane had already acknowledged. Therefore, the Court will consider Plaintiffs to have conceded the issue. *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 (4th Cir. 2014) (holding that a plaintiff had waived an issue raised by a defendant in a motion to dismiss by failing to respond). But even if Plaintiffs had not conceded the issue, the Court would hold that VDOE and are entitled to sovereign immunity via the Eleventh Amendment. *See id.* at 416 n. 3 (noting that even where a plaintiff had waived an issue, the trial court "nevertheless ha[d] an obligation to review the motions to ensure that dismissal [was] proper."). The *Ex parte Young* only applies where there is an "ongoing violation of federal law." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Here, where the defendant school systems have resumed full in-person learning and Plaintiffs do not allege any ongoing violation of federal law, the exception is plainly inapplicable.

The Court holds that Defendants VDOE and Lane are entitled to sovereign immunity for Counts Two and Four through Eight.

### D. Failure to State a Claim

Defendants also argue that Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6). Although Defendants argue that the Court should dismiss most or all of Plaintiff's complaint for failure to state a claim, the Court will only address here the non-FAPE related claims, since the FAPE-related claims are so clearly resolved on exhaustion grounds. The Court will address Count Seven (the equal protection claim), Count Eight (the substantive due process

11

claim),[2] and Counts Nine and Ten (the RICO clams).

### 1. Failure to State an Equal Protection Claim

Plaintiffs have failed to state a plausible equal protection claim, so the Court will dismiss Count Seven. First, the Court notes that any equal protection claim that Plaintiffs have articulated would be subject to rational basis review because education is not a fundamental right (*see Sandlin v. Johnson*, 643 F.2d 1027, 1029 (4th Cir. 1981) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35–40 (1973)) and persons with disabilities are not a suspect class for the purposes of an equal protection challenge (*see Wessel v. Glendening*, 306 F.3d 203, 210 (4th Cir. 2002) (citing *City of Cleburne, Tex. v. City of Cleburne Living Ctr.*, 473 U.S. 432, 442–47 (1985)).

Under rational basis review, a challenged classification enjoys a strong presumption of validity, and the plaintiff must "negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 447 (4th Cir. 2004) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001)). And regardless of the standard of review, Plaintiffs must establish (1) that they were treated differently from others "similarly situated" and (2) that the unequal treatment was the result of intentional or purposeful discrimination. *Kolbe v. Hogan*, 849 F.3d 114, 146 (4th Cir. 2017) (en banc) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). At the motion to dismiss stage, then, Plaintiffs must "allege facts which show that the defendants treated [them] differently from others with whom [they] were similarly situated." *Mills v. City of Roanoke*, 518 F. Supp. 2d 815, 822–23 (W.D. Va. 2007) (citing *Veney v. Wyche*, 293 F.3d 726,

---

[2] Although the Court holds that Counts Seven and Eight (the § 1983 claims) fall into the exhaustion requirement because they "seek[] redress for a school's failure to provide a FAPE" within the meaning of *Fry*, 137 S. Ct. 743, the Court will still address the 12(b)(6) issues with those Counts because it is not quite as obvious that they require exhaustion as it is that Counts One through Six require exhaustion.

12

730–31 (4th Cir. 2002).

Plaintiffs have cited no facts that suggest that they were intentionally treated differently than any other similarly situated party. In fact, the Complaint notes the opposite—that the defendant school systems discontinued in-person learning for all children, disabled and non-disabled alike, during the relevant period. (*See* Dkt. 1 at ¶¶ 63–64). Plaintiffs apparently recognize this, and instead have chosen to plead that they can make out their equal protection claim by showing disparate impact. (Dkt. 1 at ¶¶ 258–64). They cite—confusingly—to a Ninth Circuit case, *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021), that considered whether a district court erred in applying a disparate impact framework to a statutory ADA claim. (Dkt. 57 at 9; Dkt. 58 at 9; Dkt. 59 at 11; Dkt. 60 at 12). But that case is entirely irrelevant to their constitutional equal protection claim, which has its own well-settled framework requiring a showing of intentional discrimination, and regardless is not binding authority in the Fourth Circuit.

In short, Plaintiffs have not pled facts showing that they intentionally treated differently from others similarly situated, so the Court will dismiss Count Seven.

### 2. Failure to State a Substantive Due Process Claim

Plaintiffs have not stated a plausible substantive due process claim, so the Court will dismiss Count Eight. The "protections of substantive due process . . . run only to state action so arbitrary and irrational, so unjustified by any circumstance of governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty., Md.*, 946 F.2d 278, 281 (4th Cir. 1991) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To clear that hurdle, the Complaint must sufficiently establish three elements: (1) a specific liberty or property

interest, (2) facts demonstrating how the defendant deprived that liberty or property interest, and (3) facts showing how the defendant's actions exceeded the bounds of legitimate government action and that no process could cure the deficiency. *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995).

First, Plaintiffs have not identified a specific liberty or property interest cognizable under a Section 1983 substantive due process claim. The only interest that they identify at all is the Virginia State Constitution's protection of the right to an education. (*See* Dkt. 1 at ¶¶ 269–71). But Section 1983 only provides a remedy for violations of federal rights, and a Plaintiff must identity a specific right guaranteed by the United States Constitution or a federal statute. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). They plainly have not done so.

Second, even if Plaintiffs had identified a cognizable liberty or property interest, they have not identified how they were deprived of that interest. The Court notes that the Complaint alleges that Plaintiffs continued to receive an education during the relevant period in the early months of the pandemic, albeit an education conducted remotely, (Dkt. 1 at ¶¶ 63–65), so, to the extent that Plaintiffs have a liberty or property interest in receiving an education, they have not been deprived of that interest.

For those reasons, the Court will dismiss Count Eight.

### 3. Failure to State a RICO Claim

Plaintiffs' RICO claims, Counts Nine and Ten, are beyond meritless. A civil RICO claim has four elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). These elements are

demanding because "Congress contemplated that only a party engaging in widespread fraud would be subject to [RICO's] serious consequences" *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989).

Plaintiffs have not adequately pled that Defendants engaged in a "pattern" of "racketeering." For a pattern of racketeering to exist, Defendants must have performed "two or more predicate acts of racketeering . . . within a ten-year period." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002). Plaintiffs allege that Defendants' particular racketeering acts were federal mail and wire fraud. (Dkt. 1 at ¶¶ 290–91). But Plaintiffs make *no* factual allegations to support that assertion. Plaintiffs allege that each of the school system defendants made "assurances" to VDOE that they were complying with the IDEA, that VDOE made "assurances" that it was complying with the IDEA to the U.S. Department of Education, and that VDOE and the school systems in turn received funds from the U.S. DOE. (Dkt.1 at ¶¶ 73, 275, 281, 288, 294, 302, 311, 326, 331, 336, 341, 345), Plaintiffs allege each of those acts in extremely broad fashion, simply alleging that each of them, "upon information and belief," took place "between January of 2020 and July of 2020." (*Id.* at ¶¶ 302, 311–13, 326, 331, 336, 341, 345).

Even putting aside their imprecision, Plaintiffs' allegations, if taken as true, come nowhere close to establishing a "pattern" of "racketeering." Among the many reasons why, the allegations turn on the Court accepting as true that Defendants were, in fact, violating the IDEA (because otherwise Defendants' assertions that they were complying with the IDEA would be true), but the Court need not accept as true Plaintiffs' *legal* claim that Defendants were violating the IDEA for the purposes of the motion to dismiss. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (noting that a court need not "accept the legal conclusions drawn from the facts" pled in the complaint).

15

The second major reason that Plaintiffs' RICO claims fail is that they lack RICO (as opposed to Article III) standing to bring the claims. A plaintiff bringing a civil RICO claim must have standing to do so. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267–68 (1992); 18 U.S.C. § 1964(c). The Fourth Circuit has identified "certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962." *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (citing *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n. 10 (4th Cir. 1988)). Those requirements include that "(1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury." *Id.*; *see also Brandenburg*, 859 F.2d at 1178–88. Thus, "To have standing, plaintiffs must show that they were the intended targets of the RICO violations." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp 2d 521, 549 (S.D.N.Y. 2002). Plaintiffs must establish "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. SIPC*, 503 U.S. 258, 268 (1992), and that link must not be "too remote," *id.* at 271.

Even taking Plaintiffs' allegations as true, including the unwarranted legal allegation that Defendants were actually violating the IDEA, Plaintiffs have, at most, alleged that Defendants committed fraud against the United States—not against Plaintiffs. There is no alleged relationship between the purported predicate acts (the false assertions of compliance with the IDEA) and the purported injuries suffered by Plaintiffs (the temporary move to remote learning). Thus, Plaintiffs do not have RICO standing.

As the Southern District of New York held in a substantially identical case brought by Plaintiffs' counsel, the RICO claims against the defendant school systems "reek of bad faith and contrivance." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 172 (S.D.N.Y. 2020). Even after having

16

been warned once, Plaintiffs' counsel again brought a complaint—with nothing more than conclusory allegations—claiming that defendant school systems, while trying to protect their students from a deadly global pandemic, engaged in racketeering, mail fraud, and wire fraud.

The Court will dismiss Counts Nine and Ten with prejudice.

## IV.  Conclusion

For the reasons stated, the Court will dismiss the Complaint in its entirety, with prejudice, in an order that will accompany this motion.

The Clerk of Court is directed to deliver a copy of this memorandum opinion to all counsel of record.

Entered this <u>2nd</u> day of June 2022.

*[Signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE